**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**BILLY BURRIS**                                                                                          **PLAINTIFF**

      **v.**                        **CASE NO. 5:07-CV-087 BSM**

**QUORUM COURT OF LINCOLN COUNTY,**
**ARKANSAS; THE INDIVIDUAL MEMBERS OF**
**THE QUORUM COURT OF LINCOLN COUNTY,**
**ARKANSAS, in their official capacities only; LARRY**
**MCGEE, the Sheriff of Lincoln County, Arkansas, in both**
**in his official and individual capacities; JASON CASE,**
**Deputy Sheriff of Lincoln County, Arkansas, in both his**
**official and individual capacities; BENJAMIN REEVES,**
**Deputy Sheriff of Lincoln County, Arkansas, in both his**
**official and individual capacities; and KEVIN GOFORTH,**
**Deputy Sheriff of Lincoln County, Arkansas, in both his**
**official and individual capacities**                                                   **DEFENDANTS**

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Having reviewed defendants' motion for summary judgment and the entire record

herein, the court finds as follows:

### I.  FACTUAL BACKGROUND

Viewing the facts in the light most favorable to plaintiff Billy Burris ("Burris"), the

court finds that Steven Wrinkle, along with his family and friends, have continuously

trespassed on Burris' land since Wrinkle  moved near Burris' property in 2002.  Plaintiff's

Affidavit ("Pltf.'s Aff.), ¶ 10.  Wrinkle, along with his family and friends, have threatened

and inflicted serious physical injuries upon Burris and his wife when Burris addressed these

matters with them, and Burris reported these incidents to the police.  *Id*. at ¶ 10.  On August

15, 2003, Wrinkle and his family and friends attacked Burris and his wife.  *Id*. at ¶ 11.  Burris

submits various statements and interviews regarding incidents involving Wrinkle. *See* Pltf.'s

Exhibits C, E, F, G, H, I, J, and K.

On August 25, 2003, Phillip Green, a Deputy Prosecuting Attorney, sent the following

memorandum to Cindy King and Gerald Dutton, Sheriff:

> I am returning the attached affidavits and have approved none for charges.
>
> These affidavits concern the latest episode involving Billy Burris, Kathleen Burris, Steve Wrinkle, Ricky Wrinkle, Jim Tubbs and Melissa Tubbs.  As a result of certain allegations of serious injury to one of these parties, the Arkansas State Police investigated this matter.  It is their recommendation that no charges be filed.
>
> Please notify all of these parties that the law enforcement community is worn out babysitting them.  From now on, if law enforcement has to answer any disturbances involving these parties, I am recommending that all involved parties be arrested for disorderly conduct and not release from jail until they post a full cash bond.  Anyone under the influence of alcohol will also be charged with public intoxication and a cash bond on that charge will be required.
>
> If these people cannot resolve their differences in a peaceful manner, they all need to stay in their houses.  I am sending a copy of this memo to Gerald Dutton.  Feel free to provide a copy to each of the complainants.

Exhibit B, Plaintiff's Statement of Material Facts ("Pltf.'s Stmt. of Facts").

On January 19, 2004, Burris observed Wrinkle and others standing across the road

with firearms, heard gunshot bullets hitting the trees near him, and crawled to safety to report

the incident to the Lincoln County Sheriff's Office.  Pltf.'s Aff. ¶¶ 13-14.  Lincoln County

Deputy Sheriff Jason Case ("Deputy Case") found firearm shells, but threw them away

stating to Burris that he was not going to arrest anyone "since it was just Steven and his

friends trying out a new gun and they were not shooting" at Burris. *Id*. at ¶¶ 15-17. Three days later, Burris found bullet holes and fragments in a cross-tie log on his property where he had been standing, and as instructed by the Arkansas State Police, cut the cross-tie down and took it to the Sheriff's Office for comparison to Wrinkle's weapon. *Id*. at ¶¶ 18-19. No action was taken. *Id*. at ¶ 20.

Burris states that on May 1, 2005, Wrinkle and several others drove by with open beer containers in the truck, and then stopped the truck to taunt, curse, and threaten him. *Id*. at ¶ 22. As Burris approached the road to ask Wrinkle to go away, Wrinkle began to "scratch off" and threw gravel at him, but because Burris could not catch Wrinkle's truck, Burris told him he did not have time for his childishness and was going home. *Id*. at ¶ 23. When Burris' wife came outside and asked Wrinkle to leave, Wrinkle called her names, so they went back into the house. *Id*. at ¶ 24.

Upon his arrival at the scene, Deputy Case spoke with both Burris and Wrinkle, who was holding an open beer can that he placed on the patrol car. *Id*. at ¶ 26. Deputy Case accused Burris of being drunk and of threatening or firing a weapon, but Deputy Case accepted Wrinkle's statements over Burris'. *Id*. at ¶¶ 27-28. In frustration, Burris struck his hand against his own vehicle. *Id*. at ¶ 29.

Deputy Case arrested Burris for terroristic threatening based upon allegations that Burris had made threats against Wrinkle and that Burris fired shots from a weapon around that same time. Plaintiff's response to defendants' statement of facts ("Stmt. of Facts"), ¶¶

9, 11.  Deputy Case made the decision to arrest Burris after discussing the matter with Burris, Burris' wife, Wrinkle, and other witnesses at the scene.  *Id*. at ¶ 11.  Deputy Case transported Burris to the Lincoln County Sheriff's Department, where he was booked into the jail and charged with terroristic threatening.  *Id*. at ¶¶ 13-14.  Burris posted a bond of $440.00 and was released after approximately one hour.  *Id*. at ¶ 15; Pltf.'s Aff. ¶ 30.

On May 2 or 3, 2005, Burris pled guilty to the terroristic threatening charge at the Lincoln County District Court Clerk's Office with the understanding that his bond would be forfeited to pay his fines and costs in the amount of $440.00.  Stmt. of Facts, ¶ 16; Pltf.'s Aff. ¶ 31.  Burris was further advised that he did not need to come to court on the scheduled June 22, 2005, court date.  Stmt. of Facts, ¶ 17.  Burris advised Deputy Case on the telephone that he had reluctantly pled and paid the fine, but that "what they were doing was wrong and [he] was not going to keep taking it," to which Deputy Case stated, "good, hope I won't have to see you anymore."  Pltf.'s Aff. ¶ 34.

Also on May 3, 2005, Wrinkle swore out a warrant of arrest for the incident that occurred on May 1, 2005.  Stmt. of Facts, ¶ 18.  The "Affidavit For Warrant of Arrest" states:

> I, Steve Wrinkle do solemnly swear that Billy Ray Burris in said County of Lincoln did, on the 1st of May, 2005 commit the offense of terroristic threatening and pray a warrant from said District Court, to apprehend and bring said Billy Ray Burris before said Court to be dealt with according to law.

Exhibit O, Pltf.'s Stmt. of Facts.  The "Attachment to Affidavit" states:

> On the 1st day of May, 2005, in ( . . . Star City, Lincoln County) at approximately 6:30 p.m. Billy Ray Burris did commit the following act(s): Billy Ray drove past my house slowly look toward my house he went and

parked in Walker Blake's land, got out of his truck and looking at our place with binoculars.  I Tara Wrinkle drove by and Billy Ray started walking toward the woods on Walker Blake's land.  I Tara Wrinkle went to Freddie Drinne's house and told Steve Wrinkle what Billy Ray was doing.  I left and was going back home when I saw Billy Ray driving up the road.

I find probable cause to exist for the issuance of an arrest warrant.

Exhibit P, Pltf.'s Stmt. of Facts.  The document is signed "Steven Wrinkle," although the

signature line was for Victor Harper, District Judge.  *Id.*

A "Warrant of Arrest" naming Billy Ray Burris and listing the charge of "Terroristic

Threatening" dated May 5, 2005, directed to "Any Sheriff . . . In The State Of Arkansas"

states as follows:

It Appearing That There Are Reasonable Grounds For Believing That The Above-Named Person Has Committed The Offense(s) Listed Below.  You Are Therefore Commanded To Arrest And Bring The Above-Named Person Before Victor Harper Judge of the District Court of Star City - County Division To Be Dealt With According To Law.

Exhibit Q, Pltf.'s Stmt. of Facts. The warrant is purportedly signed by Judge Harper,

although Burris asserts that no original or certified record of such warrant was submitted.

*Id.*

On June 15, 2005, Deputy Case proceeded to Burris' residence to serve the warrant

of arrest.  Stmt. of Facts, ¶ 21.  According to the complaint, Deputy Benjamin Reeves

("Deputy Reeves") and Deputy Kevin Goforth ("Deputy Goforth") accompanied Deputy

Case.  Complaint, ¶ 12.  Burris advised Deputy Case that the warrant was for the incident that

Deputy Case had previously arrested him on and that he had already pled guilty to the charge

5

and paid the fine.  Stmt. of Facts, ¶ 22.  Burris states that he had already informed Deputy

Case of these facts via telephone on May 4, 2005.  *Id*.  Additionally, Burris states that he

showed defendants Deputy Reeves, Deputy Goforth, and Deputy Case the bond, receipt for

fine payment, and handwritten note from the Court Clerk reflecting a plea and disposition

of the charges and release from further appearance.  *Id*.  The officers also refused to contact

Mrs. Wayne Boren to confirm the bond, payment of fine and costs, and disposition.  *Id*.

Deputy Reeves purportedly called "Lincoln 1," believed by Burris to be defendant Sheriff

Larry McGee ("Sheriff McGee"), regarding the dispute.  *Id*.  Deputy Reeves told Burris that

he was instructed to proceed with the arrest.  *Id*.  Burris states that Deputy Reeves is the first

cousin of Steven Wrinkle.  Pltf.'s Aff. ¶ 4.

Burris states that although he is physically disabled and frail, the officers "roughly

handcuffed" him with his hands behind his back "so tight they were cutting" him, and the

officers refused to loosen the handcuffs although he "cried out complaining" and was in

excruciating pain.  *Id*. at ¶ 40.  Burris was booked into the jail at 19:46 hours.  Stmt. of Facts,

¶ 24.  Burris states that he was released one and a half or two hours later.  *Id*.

## II.  PROCEDURAL BACKGROUND

In his complaint, Burris asserts that defendants harassed, assaulted, falsely

imprisoned, and maliciously prosecuted him in violation of his rights to liberty, due process,

and equal protection under 42 U.S.C. § 1983.  He also asserts pendent state law causes of

action for harassment, assault, false imprisonment, and malicious prosecution.

6

On August 11, 2008, defendants filed their motion for summary judgment, brief in support, and statement of facts.  Burris' response was due on August 25, 2008, but he failed to timely respond.  On August 27, 2008, this court entered an order granting defendants' motion for summary judgment.  On September 11, 2008, Burris filed a motion for reconsideration.

On September 29, 2008, the court granted the motion for reconsideration stating:

> After review of the warrant and accompanying documentation, and plaintiff's arguments, it appears that there may be outstanding questions of law and fact as to the facial validity of the warrant.  Additionally, although the court questions whether plaintiff can survive summary judgment, the court prefers to consider the case on the merits.  Although the court in no way condones the failure to timely comply with the court's scheduling order and the local rules, the court will grant plaintiff's motion for reconsideration.

The court directed Burris to submit his response to defendants' motion for summary judgment and statement of facts on or before October 6, 2008.  The court also allowed defendants to submit a reply brief addressing the arguments set forth in Burris' submissions on or before October 14, 2008.

## III.  SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim.  *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial.  *Celotex Corp.*, 477 U.S. at 322.

## IV.  DISCUSSION

Defendants assert that they are entitled to summary judgment because they engaged in no conduct resulting in the violation of Burris' constitutional rights.  Defendants also assert that they are entitled to qualified immunity.

A.      <u>Individual Capacity Claims Against Defendants Case, Reeves, and Goforth</u>

Section 1983 provides a cause of action against government officials who deprive persons of "rights, privileges, or immunities secured by the Constitution." *Nelson*, 533 F.3d at 961 (citing 42 U.S.C. § 1983). "Government officials are entitled to a dismissal 'if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id*. at 961-62 (citing *Sanders v. City of Minneapolis, Minn.,* 474 F.3d 523, 526 (8th Cir.2007)).

"In addressing an officer's claimed entitlement to qualified immunity, the court must first determine whether the allegations amount to a constitutional violation, and then, whether that right was clearly established." *Id*. at 962. "Qualified immunity is not just a defense to liability, it constitutes immunity from suit." *Id*. "If the allegations and undisputed facts do not amount to a constitutional violation, 'there is no necessity for further inquiries concerning qualified immunity.'" *Id*. (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

Qualified immunity is a question of law for the court. *Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir. 2007). "Whether an official is entitled to qualified immunity depends upon the objective legal reasonableness of the official's actions assessed in light of the legal rules that were clearly established at the time of the actions in question." *Id*. (citing *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (internal quotation marks omitted). Qualified immunity shields defendants "[f]rom liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Marley v. Crawford County, Arkansas*, 383 F. Supp. 2d 1129, 1131-32 (W.D. Ark. 2005) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

"To withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated [the] plaintiff's clearly established right." *Goff v. Bise*, 173 F.3d 1068, 1072 (8th Cir. 1999).  The court notes that Burris has asserted that his arrest was motivated by malice or bad faith, but the Supreme Court revoked the subjective component of qualified immunity in *Harlow v. Fitzgerald,* 457 U.S. 800, 817-18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  *See Robinette v. Jones*, 476 F.3d 585, 592 n.7 (8th Cir. 2007).

Defendants assert that Burris was arrested pursuant to a facially valid warrant, and thus, there was no violation of his constitutional rights.  "An arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983 against the arresting officer." *Fair v. Fulbright*, 844 F.2d 567, 569 (8th Cir. 1988).  *See also Robinette*, 476 F.3d at 592-93 (holding that officers were entitled to qualified immunity for the 1:00 a.m. arrest of plaintiff because the warrant was valid on its face, it would not be clear to a reasonable officer that his conduct was unlawful in the situation, and the

constitutional right is not clearly established).  Defendants note that they did not participate

in the securing of the warrant in question, and therefore, it cannot be said that they

manipulated the evidence to cause the magistrate to issue the warrant.  Defendants also note

that once they were apprised of the possibility that this was a duplicate charge, the officers

investigated and allowed Burris to be released without the necessity of posting a new bond.

Burris asserts that defendants are not entitled to qualified immunity because the

warrant was not facially valid, as the affidavit for warrant of arrest and attachment to

affidavit accompanying the warrant do not adequately support the issuance of the warrant of

arrest.

> It is the magistrate's responsibility to determine whether the officer's
> allegations establish probable cause and, if so, to issue a warrant comporting
> in form with the requirements of the Fourth Amendment.  In the ordinary case,
> an officer cannot be expected to question the magistrate's probable-cause
> determination or his judgment that the form of the warrant is technically
> sufficient.  "[O]nce the warrant issues, there is literally nothing more the
> policeman can do in seeking to comply with the law." . . . Penalizing the
> officer for the magistrate's error, rather than his own, cannot logically
> contribute to the deterrence of Fourth Amendment violations. . . . [T]he
> officer's reliance on the magistrate's probable-cause determination and on the
> technical sufficiency of the warrant he issues must be objectively reasonable,
> . . . and it is clear that in some circumstances the officer will have no
> reasonable grounds for believing that the warrant was properly issued.

*United States v. Leon*, 468 U.S. 897, 921-23, 104 S. Ct., 3405, 3419-20, 82 L.Ed.2d 677

(1984) (internal citations omitted).  *See also Stigall v. Madden*, 26 F.3d 867, 869 (8th Cir.

1994) ("The warrant itself . . .shields [an officer] from liability for executing it, unless a

reasonably well-trained officer would have known that the arrest was illegal despite the magistrate's authorization.").

The warrant charged Burris with terroristic threatening.  Arkansas Code Annotated § 5-13-301, Terroristic Threatening, provides in pertinent part:

(a)(1) A person commits the offense of terroristic threatening in the first degree if:

> (A) With the purpose of terrorizing another person, the person threatens to cause death or serious physical injury or substantial property damage to another person; or

. . .

(2) Terroristic threatening in the first degree is a Class D felony.

(b)(1) A person commits the offense of terroristic threatening in the second degree if, with the purpose of terrorizing another person, the person threatens to cause physical injury or property damage to another person.

(2) Terroristic threatening in the second degree is a Class A misdemeanor.

. . .

It is not clear from the record whether Burris was charged with felony or misdemeanor terroristic threatening.  Regardless, clearly the Warrant of Arrest, Affidavit For Warrant of Arrest, and Attachment to Affidavit do not contain sufficient probable cause for the charge of either felony or misdemeanor terroristic threatening.   The court notes that it expresses no opinion as to whether Officer Case had probable cause to arrest Burris on May 1, 2005.

The question here is whether the officers' reliance on the magistrate's probable-cause determination and the technical sufficiency of the warrant was objectively reasonable.  "To preclude a grant of qualified immunity, a 'warrant application [must be] so lacking in indicia

of probable cause as to render official belief in its existence unreasonable.'" *McGee v. Broz*, 251 F.3d 750, 752 (8th Cir. 2001).  Probable cause existed if at the moment of arrest, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing Burris committed the charged crime.  *Womack v. City of Bellefontaine Neighbors*, 193 F.3d 1028, 1031 (8th Cir. 1999).

Here, a reasonable jury could find that a reasonably well-trained officer would have known that the arrest was illegal, despite the magistrate's authorization, because the Warrant of Arrest, Affidavit For Warrant of Arrest, and Attachment to Affidavit obviously did not contain sufficient probable cause for the charge of either felony or misdemeanor terroristic threatening.  Additionally, taking the facts in the light most favorable to Burris, Deputy Case knew that Burris had already been arrested for terroristic threatening on May 1, 2005, and all three officers had information suggesting that Burris pled guilty and paid a fine regarding the terroristic threatening charge arising from the events on May 1, 2005.  Furthermore, a reasonable jury could find that Burris' right not to be arrested without probable cause was clearly established.  *Hill v. Scott*, 349 F.3d 1068, 1072 (8th Cir. 2003) ("The Fourth Amendment right of citizens not to be arrested without probable cause is clearly established.").  Therefore, defendants Case, Reeves, and Goforth are not entitled to qualified immunity at this stage of the proceedings.

B.    Individual Claims Against Sheriff McGee

Defendants assert that summary judgment is appropriate as to Sheriff McGee in his individual capacity because he did not participate in the decision to arrest or transport Burris to the Lincoln County Sheriff's Department, and Burris has failed to allege any inappropriate conduct by Sheriff McGee.   Defendants also assert that each of the officers involved had supervision, as demonstrated by the fact that Deputy Case contacted his supervisor, Chief Deputy Brockman, to ascertain what action should be taken once he discovered that the warrant of arrest appeared to be a duplication.   Defendants further assert that Lincoln County's policies regarding the arrest and detention of persons only when probable cause is present are consistent with the law, and each of the officers involved were sufficiently trained, as they were certified officers by the Arkansas Law Enforcement Training Academy.

"[A] supervisor may be held individually liable under § 1983 if he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996).   For a supervisor to have violated a plaintiff's constitutional rights by failing to supervise, it must be shown that the supervisor: "(1) Received notice of a pattern of unconstitutional acts committed by subordinates; (2) Demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) Failed to take sufficient remedial action; and (4) That such failure proximately caused injury [to the plaintiff]." *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997).

14

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 1156 (quoting *Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989)). "It is necessary to show that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* (quoting *Fowler*, 98 F.3d at 1076). In order to demonstrate deliberate indifference or tacit authorization, a plaintiff must show that "the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Fowler*, 98 F.3d at 1078.

In his affidavit, Sheriff McGee states that he had no involvement, direct participation, or any knowledge of the actions complained of in Burris' complaint until such time as those actions had been concluded. Exhibit 1, Defendants' Motion for Summary Judgment ("Defs.' Motion"). He also states:

> Lincoln County, Arkansas has in place policies that only authorize the physical detention of persons for alleged criminal conduct in the event a law enforcement officer had probable cause to believe that that individual had in fact engaged in illegal activity or that individual was being arrested pursuant to a facially valid warrant."

Exhibit 1, Defs.' Motion.

15

Burris asserts that he believes that Deputy Reeves contacted Sheriff McGee when he radioed "Lincoln 1" seeking instructions on whether to proceed with the arrest on June 15, 2005. Additionally, Burris states in his affidavit that "[a]ccording to a verbal statement made to [him] by Deputy Sheriff Mike Shaha in or around 2004, only [Deputy Shaha] and Deputy Sheriff Mike Brockman were certified law enforcement officers for Lincoln County at that time, and neither of the separate defendants Case, Reeves or Goforth were so certified." Pltf.'s Aff. ¶ 6. Burris also states that defendants have failed to submit any evidence or proof to support the alleged policy or training regarding said policy, and that the defendants' actions and omissions belie any such policy or training.

Based upon the current record, questions of fact exist as to whether Sheriff McGee was contacted by Deputy Reeves at the time of the arrest, and whether defendants Case, Reeves, and Goforth were certified. Furthermore, defendants provide no support, other than the affidavit of Sheriff McGee, that the alleged policy exists, and no support for the bare assertion that the defendants were trained regarding said policy. Therefore, summary judgment is denied as to Sheriff McGee, and he is not entitled to qualified immunity.

C.    Official Capacity Claims

Burris' claims against the Quorum Court of Lincoln County, Arkansas, the individual members of the Quorum Court of Lincoln County, Arkansas in their official capacities, and defendants McGee, Case, Reeves, and Goforth, in their official capacities, are essentially claims against Lincoln County. *See Liebe v. Norton,* 157 F.3d 574, 578-79 (8th Cir. 1998);

*Marley v. Crawford County, Arkansas*, 383 F. Supp. 2d 1129, 1132 (W.D. Ark. 2005).  In order to hold Lincoln County liable under section 1983, Burris must establish that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the county's officers]," or that a "constitutional deprivation [was] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Marchant v. City of Little Rock, Ark.*, 741 F.2d 201, 204 (8th Cir. 1984) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98 S. Ct. 2018, 2035, 56 L. Ed. 2d 611 (1978)).

"Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who [is determined by state law to have] the final authority to establish governmental policy."  *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir.1998).  "Alternatively, liability may be established through proof that the alleged misconduct was so pervasive among the non-policy making employees of the municipality as to constitute a 'custom or usage' with the force of law."  *McGautha v. Jackson County, Mo., Collections Dept.*, 36 F.3d 53, 56 (8th Cir. 1994).  "This standard serves to prevent municipal evasion of liability through improper delegation of policy responsibility or acquiescence in pervasive constitutional violations by county employees." *Id.* at 56-57.

"'[C]ustom or usage' is demonstrated by:  (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, *i.e.,* [proof] that the custom was the moving force behind the constitutional violation." *Ware*, 150 F.3d at 882.  "Liability for an unconstitutional custom or usage, however, cannot arise from a single act. " *McGautha*, 36 F.3d at 57 (citing *Wedemeier v. City of Ballwin,* 931 F.2d 24, 26 (8th Cir. 1991) ("a single deviation from a written, official policy does not prove a conflicting custom or usage"); *Williams-El v. Johnson,* 872 F.2d 224, 230 (8th Cir. 1989) (one occurrence of improper prison guard hiring contrary to official written policy "does not prove the existence of a" conflicting custom or usage)).

In his complaint, Burris states:

"[D]efendants maintain such policies and practices in the Lincoln County Sheriff's Office as encourage and countenance the arbitrary and capricious conduct of its officers and do not insure due process or accountability in the handling of criminal matters within their jurisdiction. . . . [T]he defendants have previously, arbitrarily and wrongly identified certain citizens of Lincoln County, including particularly the plaintiff herein, as 'troublemakers' who are entitled to and do receive different, resentful, disrespectful and abusive treatment as citizens in the community, unlike that afforded other, favored residents therein, and the plaintiff's unlawful arrest, assault and false imprisonment herein were the direct result of the defendants' longstanding bias and malice towards him.

Defendants assert that Lincoln County is entitled to summary judgment because it has a policy that is consistent with the Constitution and Arkansas law, which requires that no persons be detained unless there is probable cause to believe that that person has committed a criminal offense, as set forth in the affidavit of Sheriff McGee.

In response, Burris again asserts that defendants have failed to submit any evidence or proof to support such a policy, and that the defendants' actions and omissions belie any such policy.  Burris also asserts that the prosecutor's letter of August 26, 2003, explicitly threatening to withhold equal protection of the laws to him, was specifically directed to the Sheriff's Office and remains in their official records.  The court notes that the memorandum was copied to "Gerald Dutton, Sheriff."

As stated above, based upon the current record, questions of fact exist as to whether Sheriff McGee was contacted by Deputy Reeves at the time of the arrest, and defendants provide no support, other than the affidavit of Sheriff McGee, that the alleged policy exists. The court also notes that the prosecutor's letter of August 26, 2003, provides some evidence of a policy or custom.  A reasonable jury could conclude that the alleged constitutional violation implements or executes a decision officially adopted and promulgated by Sheriff McGee or was visited pursuant to a governmental custom.  Therefore, summary judgment is denied as to Lincoln County, which includes the claims against the Quorum Court of Lincoln County, Arkansas, the individual members of the Quorum Court of Lincoln County,

Arkansas in their official capacities, and defendants McGee, Case, Reeves, and Goforth, in their official capacities.

D.     Other Federal Claims

It appears that Burris is attempting to assert a claim of excessive force.  Specifically, Burris alleges assault in his complaint, and states in his affidavit that the officers "roughly handcuffed" him with his hands behind his back "so tight they were cutting" him, and the officers refused to loosen the handcuffs although he "cried out complaining" and was in excruciating pain.  Defendants have not addressed this issue in their motion, and thus, the issue is not properly before the court.  *But see Hanig v. Lee*, 415 F.3d 822, 824 -825 (8th Cir. 2005) ("An 'actual injury' must be shown to support an excessive force claim under the Fourth Amendment. . . . for the application of handcuffs to amount to excessive force, there must be something beyond minor injuries.").  Similarly, although the complaint appears to allege harassment and malicious prosecution as a basis for liability under 42 U.S.C. § 1983, defendants have not addressed this issue.  *See Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000) (citing *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 977 (8th Cir. 1993) ("An action for malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury. . . . [M]alicious prosecution can form the basis of a § 1983 suit only if defendant's conduct also infringes some provision of the Constitution or federal law.").

It is not clear whether Burris is attempting to challenge the arrest on May 1, 2005, as unlawful, and defendants have not raised this issue.  Thus, the court declines to address it. The court, however, notes that the Eighth Circuit Court of Appeals has held that "a guilty plea forecloses a section 1983 claim for arrest without probable cause." *Williams v. Schario*, 93 F.3d 527, 528-29 (8th Cir. 1996).

E.      Pendent State Claims

Burris alleges state law claims of harassment, assault, false imprisonment, and malicious prosecution.  Defendants do not address these claims in their motion, and thus, these claims survive.

Accordingly, defendants' motion for summary judgment (Doc. No. 13) is denied.

IT IS SO ORDERED THIS 4th day of November, 2008.

UNITED STATES DISTRICT JUDGE